v. Geico et al., Case No. 24-2294. Good morning. Good morning. May it please the Court, Richard Schoenstein for the appellant. I'd like to start, Your Honors, with the breach of the nondisclosure agreement claim in this case, because I think the decision below fundamentally alters the enforceability of NDAs and confidentiality agreements in a way that should be of grave concern. Confidentiality and nondisclosure agreements are routinely enforced on the terms agreed by the parties. Now, Geico fundamentally asserts that the NDA here did not cover anything that didn't meet the legal requirements of a trade secret. That kind of standard would eviscerate confidentiality agreements and NDA agreements across the business world. The point is to protect things, is not to protect things that are already protected by the law. You don't need an NDA to protect a trade secret. You have Federal law. You have State law. The idea is for the parties to reach an agreement on what constitutes confidential information and what will be treated as confidential. And that's what the parties did here. Confidential information is a defined term in the NDA. It includes the operations, technology, and systems of both parties. Geico already had access to Superseed at the time the NDA was entered into. Isn't that right? That is correct, Your Honor. So why would we think that that is the normal way to construe that language that you just read, applying it retroactively to something that's already kind of open between the two parties? Well, Geico drafted the NDA, right, because Geico had access, but also Capricorn had access to Geico's systems. And Geico drafted this NDA to further guide. This was in 2005, after 25 years of business together. But it was a new contract in 2005 to guide the parties' interaction. Geico wanted to protect its information that Capricorn had had access to for years and years and years. And concomitantly, the information of Capricorn would be protected on the same terms. Geico agreed in that agreement not to make copies, not to disclose, to limit dissemination, to treat all of that information as confidential and trade secret information, and to return the information at the option of the owner. Geico breached every one of those five things I just mentioned, as the record shows. And Geico says they were allowed to do it because the systems weren't confidential. So if I could turn this a little bit. You know, Geico alleges that you breached the NDA. And doesn't that then create some overlapping issue about how we construe the NDA? And I guess I'm asking about the pellet jurisdiction here. Geico has a separate claim for breach of the NDA based on very specific conduct of Capricorn. That is a counterclaim. That was not addressed at all in the summary judgment motion. But we're just looking at overlap and commonality of issues, right? And it's not from your perspective. I understand from the parties, you know, you have different files for different claims and district judge as well. But from our perspective, the Second Circuit, these seem like the same contract and overlapping issues, and some of the same people. It seems like overlapping issues. With respect to the claims, Your Honor, there's no overlap because the remaining claim is a completely different contract. It's the lease of royalty agreement. With respect to the counterclaims, it's a different issue because it's completely different conduct. It is different alleged confidential information. It's about what Geico says was its confidential information. That would require a future panel, for example, if that issue of the counterclaim was appealed to determine what confidential information meant. You know, Your Honor, I think I have to agree that it potentially would. But we have a problem here, and we tried to address this problem with Judge Chinn, is that we don't want to have the cart leading the horse. The claims that remain in this case are a very minor, a very modest breach of the lease and royalty agreement claim, and the counterclaims, only a couple of which proceeded on to trial. And to have a trial on those and to take up the time of a jury and to get a verdict when it is assured that we would be back here arguing the issues that we're now before the court on would be really an enormous waste of judicial resources and the time of the citizens who would be asked to function on those cases. And that's why we worked with Judge Chinn to come up with this structure where we would get a partial final judgment under Rule 54, we would stay all other claims, and we could come up here to the court. And both parties agreed to that, and both parties feel that the appellate jurisdiction is proper. Usually the parties and the district court want a decision on the thing that's being appealed, and I guess it's sort of our province to decide whether this is the type of appeal that's going to result in piecemeal litigation and creating inefficiencies from our perspective for future panels. I understand there's some balancing. Yeah. And I understand your concern, Judge Park, and we're cognizant of that and we don't want to do that, but we do think the issues are sufficiently distinct. I can't say that there's no connection whatsoever. For example, the rulings on the issues on this appeal would become law of the case that could impact some of the claims on the remaining count under the lease and royalty agreement. But that's not the standard. Right. But that's all the more reason. It's also not the standard. So interrelated is the standard.  And I don't believe it's so interrelated with the remaining claims because it's not the same conduct. If I say the argument that we were to accept that proposition, can I take you back to the breach of the NDA claim? Yes, Your Honor. It seems that the court, the district court, granted some re-judgment on this point because it thought that your contention that GEICO shared protected information lacked evidentiary support. I mean, GEICO put in various evidence about their own development of Superseed, their use of it before the agreement, et cetera. And what did your client deduce other than the conclusory statement that Superseed is a bespoke program developed by Capricorn for GEICO over a 35-year relationship? There wasn't any evidence that it took steps to protect or prevent access to Superseed in the years prior to the NDA. So why did the district court get it wrong when it said you just didn't come up with enough evidence to raise a fact question on this NDA claim? Well, because, Your Honor, for a number of reasons. I mean, the NDA itself is an effort to protect the confidentiality of the program. The program was memorialized in a 23-page manual produced by my client that contained all of the functions. So is the language in the NDA that you say was protecting your client's interests in Superseed? Well, it says, Your Honor, that confidential – it defines confidential information as including but not limited to – and I'll pass the irrelevant ones – operations, technology, or systems of the parties. Superseed was a system that was written and created by Capricorn. GEICO shared the actual screen that you would go on to utilize the system that was created by my client. They shared that with AIS. They gave them technical breakdowns. They had an in-person demonstration of how the system works. GEICO was allowed to tell AIS, the new vendor, the functionalities it wanted. We want a system that does A, B, C, and D. That was fine. But they shouldn't have said the word Capricorn. They shouldn't have showed them the system that Capricorn created, provided them technical details. They literally mapped the Capricorn system to allow extracting of data in a more expeditious fashion. So they worked with a vendor inside the system to map and extract data. After giving them a demonstration, after giving them screenshots, after having meeting after meeting and memo after memo going over the technical specifications of the product. This was abject theft. And the undercurrent of all of this is that there had been negotiations between the parties for GEICO to buy the product. They could have bought Superseed. They could have owned it lock, stock, and barrel. They refused to do that, and instead they just took it. I'm over. Do you deny that the specification, that the evidence showed the specifications of Superseed were created by GEICO and then transmitted to Capricorn? The specifications. You suggested that Capricorn developed Superseed, but there was evidence that the specifications of Superseed were created by GEICO, or did I misconstrue that? GEICO said what it wanted. GEICO wanted a system that would help reprice claims that came in to be consistent with New York law. GEICO wanted a system that would flag potential fraud. GEICO wanted a system that would be able to run numerous reports. And then Capricorn made all of that happen and interconnected it into a system that GEICO's own documents said was highly advanced and easily enhanced. That's SA1555. And in all caps and italics, it has a million capabilities, SA2891. Capricorn is who put those capabilities in place and interconnected them into one cohesive system. That's why it was used for 35 years. That's why GEICO paid a substantial licensing fee to use it for 35 years. Thank you. Good morning, Your Honors. May it please the Court. Matt Ricciardi for Defendant Appellee GEICO. I'm joined by my friend Tim Hardwick, Counsel for Defendant Appellee, CCC Intelligence Solutions. The fundamental problem with Capricorn's case from the 12B6 motion that was in the very beginning has been a failure to differentiate its claims, trade secrets, and confidential information from the business requirements specified by GEICO. As Your Honor alluded to, it is undisputed that the supersede software was developed solely to meet GEICO's business requirements. But that doesn't necessarily mean that how they achieved it wasn't confidential information. You told them what you wanted it to do, and then they developed all of the techniques that would do it. Why isn't that their confidential information? I agree with the premise, Your Honor. The problem is they've never defined that next step. So if you look at their list of trade secrets and alleged confidential information, it's all high-level statements of functionality. For example, I can give you one that's in the appendix. Mr. Schoenstein referred to a supersede manual. It appears at SA1319 in the sealed appendix. It's a list of reports. It's just bullet points that list the titles of reports. The requirement for those reports came from GEICO. There's nothing here that specifies what it is that Capricorn did in some special or new or efficient way to implement those requirements in a way that became proprietary to Capricorn. In addition, to the extent there was anything in Capricorn that at one time might have been a legally cognizable trade secret, we dispute that, but let's assume it. Capricorn vitiated that trade secret status when it filed a substantial portion of the source code for the supersede software at issue in the U.S. Copyright Office. When did it do that? In the approximately 2012 to 2013 time frame, I believe, approximately. The date, I believe, is in the record. Well, Capricorn says there was only a small sample of the source code. So, I mean, maybe it's to those portions, to the extent that's a trade secret, it's made public and no longer enjoys protection. But why would that vitiate the protections with respect to everything else? So it was a substantial portion of code. I agree it was less than all. But we're not talking about one application. This was, I believe, 13 copyright applications for different modules, each with an associated source code deposit. Capricorn's response, as Your Honor noted, was that it's not possible to fully recreate supersede from that code. That's acknowledged, but it's the wrong question. The question is whether that code discloses the trade secrets that Capricorn is claiming. So when it is. At least this brings us back to what is the trade secret. Yes, and I would also point to when we received the code from a public records request from the Copyright Office, Capricorn never produced these files. It's in discovery. We had to go to the Copyright Office and get them ourselves after we found them online. We turned over that publicly available source code to our expert, Dr. Benjamin Goldberg, who's a professor of computer science at NYU. He meticulously went through the publicly available source code, compared it to Capricorn's list of alleged trade secrets, and issued a 20-page report, which is also in the record. It appears in the appendix at A1770, where he went through each and every one of the alleged trade secrets and pointed to specifically where it is in the public source code. It's not a conclusory opinion he offered. He went one by one and pointed specifically which source code file, which function. So I agree with Your Honor's premise that because it was less than all of the code, there's a possibility that something might not have been disclosed. But the undisputed expert testimony, which Capricorn's expert never opined otherwise, is that it did fully disclose the alleged trade secrets. What's your claim for Capricorn's breach of the NDA based on? It's based on conduct that is separate and apart from the conduct that is at issue on Capricorn's breach. This is Mr. DePace, what he took, right? That's correct. Isn't his testimony also relevant to Capricorn's claims for conversion? No, Your Honor, because Mr. DePace unfortunately passed away prior to this lawsuit being filed. So there is no testimony from him. The underlying acts are disjointed. But the history, it seems like he was a principal player in connection with the allegations, Capricorn's allegations about conversion and the lockout and such. I guess where I'm going with this is his name appears both in connection with Capricorn's conversion claim and also, it seems, with respect to your still pending counterclaim for breach of NDA. And this goes to, obviously, then, is that not overlapping? I would say no, Your Honor, because the acts and the opinions that he expressed are disjoint. They relate to different things. Our breach of NDA claim concerned him using his insider access at GEICO's Woodbury regional office. He worked physically on site there. Using that physical on-site access to obtain confidential GEICO documents and e-mail them out to his boss. That's completely separate from Mr. Schoenstein and Capricorn's allegations. Mr. Asciola, that's the core of his allegations. That is testimony from Mr. Asciola. Maybe I'm mispronouncing that, but that's the core of the breach allegations. Right, but it's not that a Capricorn employee e-mailed him to his boss at Capricorn. It's completely the opposite. It's going the opposite direction. Correct. So this is perhaps a rare circumstance where I agree with Capricorn's counsel. We both see it as different disjointed facts. And different evidence and so on. Different evidence, different witnesses to some extent. Yes, Your Honor. Okay. I'm sorry, did you have a further question? Well, my question really is to go back to the NDA because I am not sure that I fully understand the NDA and particularly the whereas clause. Yeah, so Capricorn has a habit of quoting only part of the definition of confidential information. And I think that's where the disconnect lies between the parties' positions. Mr. Shorenstein quoted the including clause. He said confidential information is defined as including systems, processes, and so on. But as the district court correctly concluded, it's not everything about the systems and processes. The predicate part of the definition, which Mr. Shorenstein skipped over, is that it has to be the predicate, the previous part of the definition that Mr. Shorenstein skipped over, says it has to be confidential information of the other party. And then it says including, da, da, da. So it has to be confidential in the first instance. And your contention is that it hadn't been maintained as confidential for all the years before the NDA? Correct. Or. Excuse me. Bless you, Your Honor. Thank you. Or that it was never confidential to Capricorn because it reflected GEICO's business requirements as opposed to anything that Capricorn developed. So one or both. It depends on the particular item. So what about this demonstration? Is that not something that was not a specification from GEICO, was not GEICO's information, but rather was really at its core about what Dr. Silverstein had developed? Well, Dr. Silverstein is a dentist who admitted he can't read or write programs. So he didn't do anything. But his employee, Mr. DePace. Mr. DePace, right. Yeah. Well, when we look in the joint appendix, and you have to drill down through the statements of fact to get at the actual thing that was shown in this meeting, what you see is a screenshot of a data entry screen. I'm sorry. Where is that? Because I saw a lot of testimony about it, but not the thing itself. Yeah. So it's in the sealed appendix at SA2023. And then there's more screenshots on the pages that follow.  So when we look at the screenshot, and screenshot's a term of art. It just means what the user sees on the screen when they're using the software. It's not the source code or any internals. It's just what the user sees. Okay. So when we look at SA2023, it's a screenshot of a data entry screen that just lists the name and address of two doctors that submitted medical bills to GEICO. That's literally all it is. It's just a grid with two rows on it. There was a requirement from GEICO to be able to track what medical providers were submitting bills. Sure. But what about this screenshot is confidential to GEICO? It seems rudimentary. It just lists their name and address in a grid. Again, this comes back to the fundamental problem I started with. Capricorn has never identified what is it about this stuff that's confidential to Capricorn and not compromised by the fact that it didn't have any agent. I think it was from 2023 to 2030, I take it. Yes, yes. That's correct. And if you look through it, it's similar in character. They're all grids and data entry forms where you enter data off medical bills. Capricorn needed to say what about this is confidential to Capricorn. It hasn't done that. Well, we're about to hear from Mr. Hartwig for CCC Intelligence. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the Court. Tim Hartwig on behalf of CCC Intelligence Solutions, which is formerly known as Auto Injury Solutions or AIS, and that's what I'll call my client for this argument, Your Honor. Let me first make clear that we've spoken quite a bit about the NDA. AIS was not a party to the NDA, and we're only a party to two of the claims in this lawsuit, namely the conversion claim and the trade-seeker claim. Let me focus first on the trade-seeker claim. This is specific to AIS in addition to the defenses that the Court found correct as to both appellees. But specific to AIS on the trade-seeker claim, first and foremost, count three, there's no evidence presented by Capricorn that AIS ever copied or used any Capricorn trade secrets of any kind. And let me focus on what I mean by of any kind. First, on the software code, Capricorn's software code. Capricorn presented no evidence that AIS examined or ever had access to Capricorn's source code. Just not in this case. Secondly, Capricorn never inspected AIS's software code or AIS's software. So there's no evidence that AIS's software was similar to Capricorn's. Thirdly, and this is in the briefs as well, Your Honor, Capricorn's lead developer, Mr. DePace, concluded from his investigation on behalf of his employer, AIS cannot be copying Capricorn's software code because it's in a different language. So that disposes of the notion that my client, AIS, copied or used the software code. But beyond the software code of Capricorn, Capricorn also presented no evidence that AIS used or copied anything else from Capricorn. Nothing else. With regard to the only module the appeal addresses, their appeal addresses, there's a module called INCOBLE, which related to an NCB fraud detection test. Capricorn admits that AIS never developed any such functionality. Not just code, but no such functionality. With regard to the demonstration and some testimony about AIS looking over the GEICO personnel's shoulder while they do a demonstration, there's no testimony or evidence that AIS ever used or copied anything that it might have seen. So whether we saw it or not, there's no evidence that we used it. With regard to Mr. DePace's investigation, again, this is in the record, Mr. DePace was concluded not only that we couldn't copy the software code, Mr. DePace concluded, quote, there was no evidence that AIS was even copying concepts from Capricorn. And that's at SA 518. So you're also defending the conversion, the dismissal of the conversion claim? Yeah. I'll turn to that. I can turn to that directly, Your Honor. The conversion claim is about as easy as it gets. The only allegation of a conversion is that GEICO allegedly interfered with Capricorn's access to its software program. There's not even an allegation that my client, AIS, had any control of the software program, and it's also not mentioned in the appeal. So it's both correct below and it's been waived on appeal. Let me just make one last point, Your Honor, on that. I mean, at base, this question of whether or not my client misappropriated, used, or copied anything belonging to Capricorn, I think it boils down to Capricorn believed that the fact that my client, AIS, is now serving the same client that Capricorn used to service, GEICO, we must have copied their trade secrets. But that's not the law. That's not the law of trade secrets. You've got to identify them and you've got to prove use. They were neither identified nor the fact that we do the same business as they do is sufficient to show that we've used or copied their trade secrets. Thank you very much. Thank you, Judges. We'll hear the vote. I'll start with the whereas clause. The way counsel read that would make a whole bunch of words meaningless. You're in the nondisclosure agreement now? Yes, Your Honor. I'm on the whereas clause right at the top. Counsel says that the list of things that are confidential information are only confidential information if they're otherwise confidential. In which case, why are those words in the contract at all? The contract would just say confidential information is treated as confidential information. There wouldn't be a need to say operations, technology, or systems. Related to operations, technology, or systems? Not related to. Including the confidential information, comma, including, without limitation, information relating to such parties, business, and marketing. Yeah, that's where the relating is. Well, relating to business and marketing plans, comma, customers, comma, employees, comma, operations, technology, or systems. So it would render all of those words meaningless if it's just confidential information is confidential. It was maintained confidential previous to the NDA because the only people who ever had access to it were GEICO and Capricorn. The primary trade secret at issue in this case is the integrated supersede program. You can go back to this Court's decision. What does that mean? Can you explain exactly what the trade secret is? It takes a whole bunch of different functions. Bill repricing. All of supersede is the trade secret? Yes. So the program. The program. The compilation of all of these things. Go back to the integrated. Is that source code, then? Is that kind of what we're talking about? The source code would be a trade secret, too. Independently, we can see they didn't copy the source code. They wrote it in a different language. But the trade secret protection goes to the amalgam. Go back to the integrated cash management. I mean, functionality is something that is not a trade secret, right? That is something that GEICO tells you it wants some program to execute. Any particular functionality, Your Honor, absolutely. But combining them into an integrated system over 35 years that GEICO was paying $60,000 a month to utilize. It's a bespoke program. It's a bespoke. It seems to me to cut the other way, but maybe I fundamentally misunderstood what you're saying. Bespoke program means I'm going to give you exactly all the specifications that I need so that you can help me. Here's all of my information so that you can provide software for adjustments, for claims, for billing and so on. And what you're describing to me is functionality. It sounds like what I've just, all the information I've given to you, okay, we'll figure this out. We'll provide you software that gives you all these specifications that you have asked for. GEICO said we need a program that does all these things, and they added functionalities over the years. But they couldn't create the program themselves, or they would have. Capricorn put it all together. What more did you provide that you're now saying is separate from the specifications they gave you and therefore confidential to you, a secret to you, whatever? It seems that your responses in the last few minutes have kind of suggested that what GEICO gave you, that you used in creating the program, is now somehow confidential. No. GEICO can tell anybody in the world the functionalities they need. They could have a list of paper with functionalities. What they can't do is take the supersede manual because we tied it all together. And those snapshots from the system, that was different. They gave an in-person demonstration where they sat down with AIS, opened the system, and showed them how to use it. That was the system. If I had the manual, what more do I learn besides the specifications GEICO came to you with? What more does the manual reveal to a viewer? The manual reveals that all of these things have been consolidated into one system, that it's possible to put them all into one place and run them together. That's what they asked you for. That's not a secret. What more is there that one learns from the manual than what GEICO asked you for to begin with? I take your point on the manual alone, Your Honor. But then when you turn on the system and start typing in stuff and showing a demonstration of it and passing around the technical specifications and sharing the screenshots, you are now probing into the technology. And that was not allowed. That's what that NDA says. Look, I've got these screenshots that you rely heavily on. That's fair to say. And at 2023, I'm just looking at it. Maybe your friend can present to you. It's a billing summary report. It's a name, a city, state zip code, specialty, address. What is it about this that I could look at if I were at an AIS, for example, and say, oh, this is Capricorn's super secret information? Well, there are things right here, Your Honor. There are search codes that Capricorn wrote as part of this system. Adge FCC. Where is the search code? It says above the screenshot, it says search fields. And it lists, right? Because this is not just the screenshots. Search results and search fields. Okay. And if you go to the next page, they give you. So you are describing that as confidential information, the different fields and how to search. Yeah. The underlying data, which is claim data by people who are insured by GEICO, that belongs to those people. And then maybe to GEICO. It certainly doesn't belong to my client. But the search fields. But how it was put into this system so it could be organized, so you could run reports, so you could decide whether to deny claims, so you could reprice the claims in accordance with New York law. All of that was the secret sauce of supersede. And you. I'm still lost as to how looking at the page that Judge Loyer alluded to tells you that. It's got a code. But the code doesn't tell you how it works. Am I missing something? The code alone does not tell you. Right. So I'm still looking for what it is that's secret and helpful to them and that they were able to use without having to develop it themselves. So, Your Honor, this document, by way of example, is an eight-page document with multiple screenshots and descriptions of the way this system functions. It was accompanied by an in-person demonstration of the system so that AIS, who supposedly was an expert at this and superior to Capricorn, could come in and look at Capricorn's system and figure out how to replace it. How did you deal with the evidence that was cited that came from Mr. DePace that said there wasn't anything? DePace said the software. Sorry, Your Honor. I apologize. I jump on questions sometimes. DePace said the software wasn't copied, the source code. And the source code wasn't copied. They wrote new source code in a new language. Time marches on. This was a 35-year-old system. They were upgrading it. They were in a new language. Nobody, this case has never been about copying source code, although when we finally got a peek into their source code, it had our name in it. It had references to Capricorn. It had references to Nadine's. If it's just Geico functionalities, I don't know why the source code is referring to Capricorn at all. But we don't say they copied ours. I think that we have a list of questions for my colleagues. The issues will unwind and the arguments will unwind. Thank you very much. Quite helpful. Appreciate the court. Thank you. Court is adjourned.